IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| UNITED STATES OF AMERICA | |
|---|---|
| v. | Case No. 16-CR-283 |
| JUAN TORRES-HERNANDEZ, | |
| Defendant | |

# POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING

The defendant, Juan Torres-Hernandez, developed and executed a scheme to contact minor girls on Facebook and trick them into meeting in person for sex. The defendant created a Facebook account using a false name, a false photograph, and a false age. Using this account, he contacted Minor Victim #1 and immediately asked her age. Undeterred by her minor status (and probably encouraged by it), the defendant pressured her to send him nude photographs of herself, which she eventually did. The defendant then pressured her to meet him in person, but explained that because he did not have a car, his friend "Carlos" would pick her up. The defendant, pretending to be "Carlos," picked up Minor Victim #1 near her home in Maryland, drove her to Virginia, and engaged in unlawful intercourse with her.

Given the horrific facts of this case, the government respectfully recommends a sentence at the **high end** of the 120-135 month guidelines range.

## I. Offense of Conviction

In December 2015, the defendant created a Facebook account under the fictitious name "Daniel Gomez," using photographs of an unknown individual as his profile pictures. PSR ¶ 9. The defendant then contacted dozens of underage girls. He would immediately ask the girls their age and yet was never deterred by their response, even when a girl informed him that she was 12 years old. The defendant would then begin pressuring the victims to meet for sex.

On January 10, 2016, the defendant contacted Minor Victim #1 through the Daniel Gomez Facebook account. The defendant asked Minor Victim #1's age and she told him she was 15. PSR ¶ 10. The defendant falsely told Minor Victim #1 that he was 19. *Id.* At no point did the defendant disclose his true identity, age or photo to Minor Victim #1. *Id.* The defendant immediately began enticing Minor Victim #1 to meet in person. *Id.* When she replied that "My parents ain't gonna let me chill with a 20 year old," the defendant told her to lie to her parents and "tell them you with another friend." *Id.*

On January 12, 2016, the defendant began asking Minor Victim #1 to have sex with him and to send him nude photographs of herself. PSR ¶ 11. After Minor Victim #1 sent a photograph in which she was topless, the defendant requested photographs showing Minor Victim #1's entire body, stating things such as "But I want to see all your body and I want to see how tight you are." *Id.*

Over the next several days the defendant continued to discuss Minor Victim #1 meeting in person to have sex. PSR ¶ 12. When she eventually agreed, the

defendant explained that he would have his friend "Carlos" pick her up because the defendant did not have a car. *Id.* "Carlos" was also a fictitious name and was given in order to explain why the person picking up Minor Victim #1 would not match the photograph on the "Daniel Gomez" Facebook account. *Id.*

On January 15, 2016, the defendant drove to a location in Maryland near Minor Victim #1's home and picked her up, pretending to be "Carlos." PSR ¶ 13. The defendant then drove her back to his residence in Triangle, Virginia, with the intent to engage in sexual activity in violation of Virginia Code, Section 18.2-371, which prohibits sexual conduct between an adult and a child. *Id.* Once in his residence, the defendant engaged in unlawful sexual intercourse with Victim #1, and eventually drove her back to a location near her home in Maryland on January 17, 2016. *Id.*

A grand jury in this district issued a three-count indictment against the defendant, charging him with two counts of Coercion and Enticement of a Minor, in violation of 18 U.S.C. § 2422(a) and (b), respectively, and one count of Transportation of a Minor with Intent to Engage in Criminal Sexual Activity, in violation of 18 U.S.C. § 2423(a). On January 4, 2017, the defendant pled guilty to Transportation of a Minor with Intent to Engage in Criminal Sexual Activity. This offense carries a mandatory minimum of 10 years' imprisonment and a maximum of life; a fine of $250,000; a mandatory minimum of five years' supervised release and a maximum of life, and a $100 special assessment.

## II. Guidelines Range

The probation officer correctly calculated the defendant's offense level as follows:

| Guideline | Offense Level |
|---|---|
| Base Offense Level (Sections 2G1.3(a)(3)) | 28 |
| Offense involved misrepresentation of the defendant's identity in order to persuade, induce, entire, coerce, or facilitate the travel of a minor to engage in prohibited sexual conduct (Section 2G1.3(b)(2)) | +2 |
| Offense involved the use of a computer to persuade, induce, entire, coerce, or facilitate the travel of a minor to engage in prohibited sexual conduct (Section 2G1.3(b)(3)) | +2 |
| Offense involved the commission of a sex act (Section 2G1.3(b)(4)) | +2 |
| Acceptance of responsibility (Section 3E1.1)[1] | -3 |
| **TOTAL** | **31** |

PSR ¶¶ 30-41. Based on the defendant's Category I Criminal History, the resulting Guidelines Range is **120-135 months' imprisonment**. *Id.* ¶¶ 67-68.

## III. Sentencing Recommendation

As the Court is well aware, the Sentencing Guidelines are advisory, and just one factor that must be considered along with the other factors set forth in 18 U.S.C. § 3553(a).[2] Here, a sentence at the **high end** of the guidelines range is necessary to

---

[1] The Government hereby moves under U.S.S.G. § 3E1.1(b) for a third point based on the defendant's timely acceptance of responsibility.

[2] The § 3553(a) factors include: the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed training, medical care, or other treatment; the kinds of sentences available; the kinds of sentence and the sentencing range established for the type of offense committed; any pertinent policy statement; the need to avoid unwarranted

reflect the seriousness of the offense, afford adequate deterrence, and protect the public from further crimes of the defendant.

### A. The Sentence Should Reflect the Defendant's Egregious Crime.

This case is exactly why we have laws to protect minors from sexual exploitation by adults. The defendant deliberately targeted minor girls because he believed them to be most vulnerable to his lies and manipulation. In Minor Victim #1, the defendant found a child whose trust he could take advantage of. Minor Victim #1 had no idea that the person she was speaking to was not who he said he was. She had no idea that he had lied about the most basic things: his name, his age, and his photograph. The defendant sent Minor Victim #1 hundreds of messages trying to convince her to meet in person. To do so, he used a mix of affection (telling Minor Victim #1 he would "do anything for her"), guilt (calling her a "liar" when she tried to back out of her agreement to meet in person), and most of all, unrelenting pressure. Despite initially protesting that she was a minor and it would be illegal for them to have sex, PSR ¶ 18, Minor Victim #1 eventually agreed to meet the defendant.

According to a detailed statement that Minor Victim #1 gave to police, which the government finds credible, her meeting with the defendant quickly turned into a nightmare. Shortly after getting into his car, she asked to be taken home. PSR ¶ 22. The defendant told her it was too late, took her cell phone, drove her to his residence,

---

sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense.

and forced himself on her. *Id.* While Minor Victim #1 initially told police that she had been abducted by strangers, she quickly admitted that was not true and has been consistent in her account ever since. Most recently, she filed a victim impact statement with this Court in which she provides vivid and credible details about the horrific crimes committed by the defendant and about how the memories of those crimes continue to haunt her every single day.

The sentence should reflect that this is a contact offense that has had and will continue to have lasting effects of the victim and her family. As the Court is well aware, defendants routinely receive ten-year sentences for attempting to have sex with minors even where the purported minor was actually an undercover agent. *See* 18 U.S.C. § 2422(b) (imposing a ten-year mandatory minimum for attempted coercion and enticement of a minor).[3] Defendants who victimize real children online frequently receive even longer sentences, even where they never actually meet the children in person. *See U.S. v. Battle*, 15-cr-274-CMH (imposing a 300-month sentence for inducing minors to produce child pornography via the internet); *United States v. Brian Hendrix*, 1:15-CR-172-TSE (imposing a 252-month sentence for similar conduct). The defendant's sentence should reflect an offense that is more

---

[3] The government, of course, does not intend to minimize the severity of those crimes or the importance of punishing the offenders. To the contrary, this case underscores the importance of law enforcement efforts to catch online sexual predators before they are able to harm real children.

serious than attempted coercion and enticement and is on par with offenses where real victims are forever harmed.

### B. The Sentence Should Provide Adequate Deterrence to Sexual Predators Who Would Use the Internet to Target and Exploit Vulnerable Children.

This case is yet another reminder that the internet and social media present grave dangers for children, and unprecedented opportunities for sexual predators. In the past, it was largely possible for parents to monitor and control when and how adults interacted with their children. And if a sexual predator sought to approach a child at random, he would typically have to do so in a public place where his true identity would be exposed and where bystanders could potentially notice red flags. Today, by contrast, a sexual predator, like the defendant, can create a social media account from the privacy of his home, and then approach minor after minor until he finds someone willing to trust him. Worse, predators can easily adopt false online identities in order to gain their victims' trust and thwart law enforcement. The government respectfully submits that a severe sentence is necessary to adequately deter other sexual predators who might be inclined to copy the defendant's scheme.

### C. The Sentence Should Protect the Public from Further Crimes of the Defendant.

The defendant has a history of sexually abusing children and ignoring the law. At age thirteen, he pled guilty in juvenile court to misdemeanor sexual battery for digitally penetrating the vagina and anus of an eight year-old girl. PSR ¶ 43. The defendant received a probation sentence, which he repeatedly violated. He was

discharged from sex offender treatment for refusing to take responsibility for his crime even when a polygraph revealed his deception. *Id.* At age sixteen he violated his probation again when he was found in bed with a seventh-grade girl. *Id.* Given this history, the government respectfully submits that a significant sentence is needed to protect the public.

The defendant will likely claim that his threat to the public is mitigated by the fact that, in his plea agreement, he waived challenges to his removal from the country. But the defendant's deportation cannot be guaranteed and there is certainly no guarantee that, if deported, the defendant will not seek to reenter the country illegally. The defendant has never shown any respect for the law and there is no reason to think he will start now. A lengthy sentence is the only sure way to prevent the defendant from abusing more children.

**IV. Conclusion**

The government respectfully recommends a sentence at the high end of the 120 to 135 month guidelines range.

                                                Dana J. Boente
                                                United States Attorney

                                        By: _____/s/_____
                                           Kellen S. Dwyer
                                           Assistant United States Attorney

March 24, 2017

## Certificate of Service

I hereby certify that on March 24, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of filing (NEF) to counsel of record for the defense.

I also certify that on March 24, 2017, I will send a true and correct copy of the foregoing by e-mail to the following:

William C. Byerley
United States Probation Officer
William_Byerley@vaep.uscourts.gov

                              By:      /s/
                                      Kellen S. Dwyer
                                      Assistant United States Attorney
                                      United States Attorney's Office
                                      Eastern District of Virginia
                                      2100 Jamieson Avenue
                                      Alexandria, Virginia 22314
                                      (703) 299-3707 office, (703) 299-3981 fax
                                      kellen.dwyer@usdoj.gov